UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| JOHN RAINES, et al., | |
| Plaintiffs, | Civil No. 20-1229 (JRT/ECW) |
| v. | **MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |
| BUILDERS ALLIANCE INC.; DONALD C. SPEESE, individually, | |
| Defendants. | |

---

Nathan T. Boone, Amanda R. Cefalu, **KUTAK ROCK LLP**, 60 South Sixth Street, Suite 3400, Minneapolis, MN 55402, for plaintiffs.

Marcus A. Jarvis, **MARCUS-JARVIS LAW LIMITED**, 3621 Eighty-Fifth Avenue North, Suite 201, Brooklyn Park, MN 55443; Keillen V. Curtis, **CURTIS LAW FIRM**, 222 South Ninth Street, Suite 1600, Minneapolis, MN 55402, for defendants.

Plaintiffs, trustees of the Carpenters and Joiners Welfare Fund, Twin City Pension Master Fund, and the Carpenters and Joiners Apprenticeship and Journeyman Training Trust Fund (collectively the "Funds") brought this action seeking unpaid fringe benefit contributions from Defendants Builders Alliance and their owner, Defendant Donald C. Speese. Because Defendants have failed to submit evidence sufficient to raise a genuine dispute of material fact as to their liability and the amount owed in unpaid fringe benefit contributions, the Court will grant Plaintiffs' Motion for Summary Judgment and award damages accordingly.

**BACKGROUND**

**I.    FACTUAL BACKGROUND**

The Funds are multi-employer, jointly trusteed fringe benefit plans administered in accordance with ERISA. (Compl. ¶¶ 1–4, May 5, 2021, Docket No. 1.) Builders Alliance is a Minnesota corporation engaged in the construction and carpentry business; Speese is the owner and officer of Builders Alliance. (*Id.* ¶¶ 5–6.)

Builders Alliance is party to a Collective Bargaining Agreement ("CBA"). (Decl. of Kyle Anderson ("Anderson Decl."), Ex. A at 2–40, May 27, 2021, Docket No. 22.) Speese agreed to be held personally liable under the CBA for any failure by Builders Alliance to comply with the terms of the CBA. (*Id.* at 39–40.) At all relevant times, Defendants were bound to the CBA. (Compl. ¶ 9; Ans. ¶ 10, July 3, 2020, Docket No. 6.)

The CBA requires Builders Alliance to make fringe benefit contributions to the Funds. (Anderson Decl., Ex. A at Article 15.) These contributions fund employees' health and welfare, pensions, and training and apprenticeship benefits. (*Id.*) A fringe fund report is due every month along with the fringe benefit payment. (*Id.*) Under the CBA, in the event of unpaid fringe benefit contributions, the delinquent employer must pay an additional 10 percent in liquidated damages. (*Id.* at Article 15.D.) The employer is also liable for interest on the unpaid contributions. (*Id.*) The Funds are authorized to demand all necessary employment records, payroll documents, and other relevant records and

information from an employer whenever the Funds deem such examination is necessary to ensure employer compliance. (*Id.* at Article 15.H.)

On November 15, 2018, the Funds initiated an audit of Builders Alliance's fringe benefit contributions. (Anderson Decl., Ex. E at 66.) The Funds requested Builders Alliance provide them with employment and payroll records for the period of December 2016 through November 2019. (*Id*.) Builders Alliance produced the relevant documents to Plaintiffs' auditor. (Anderson Decl. ¶¶ 7–8.)

Plaintiffs' auditor, in conducting the audit, reviewed: (1) fringe fund reports; (2) Minnesota quarterly unemployment reporting forms; (3) IRS form 941 quarterly reports; (4) IRS form W-2s and W-3s; (5) IRS form 1099s; (6) payroll summaries; (7) employee earning summaries; and (8) employee paystubs. (Anderson Decl. ¶ 9.)

The auditor discovered that Builders Alliance had failed to remit fringe benefit contributions to the Funds for a significant number of covered work hours performed by Builders Alliance employees. (Anderson Decl., Ex. G at 69–72.) The auditor also found that Builders Alliance had employed a subcontractor who was not a signatory to the CBA. (Anderson Decl. ¶ 15.) If a non-signatory subcontractor is hired, the employer, here Builders Alliance, is responsible to the Funds for the fringe benefit contributions for covered work hours performed by the subcontractor employees. (Anderson Decl., Ex. A at Article II.) Builders Alliance failed to make contribution payments for these subcontractor covered work hours. (Anderson Decl. ¶ 18.) While the audit was being

conducted, Builders Alliance submitted two payments of fringe benefit contributions to the Funds which the auditor then credited against the final invoice. (Anderson Decl., Ex. H at 76.)

Plaintiffs' auditor prepared and sent an audit invoice to Builders Alliance requesting the listed amount of unpaid contributions be sent to the Funds as soon as possible. (Anderson Decl., Ex. G at 69.) To date, Builders Alliance has made no payments on the amount due.

## II.  PROCEDURAL BACKGROUND

On May 21, 2020 Plaintiffs filed their Complaint seeking the unpaid fringe benefit contributions and other damages provided for under ERISA § 515 and the CBA. Defendants filed an Answer to the Complaint on July 3, 2020. Plaintiffs have now filed a Motion for Summary Judgment. (Plf. Mot. Summ. J., May 27, 2021, Docket No. 19.)

## DISCUSSION

### I.  STANDARD OF REVIEW

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most

favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party may not rest on mere allegations or denials but must show, through the presentation of admissible evidence, that specific facts exist creating a genuine issue for trial. *Anderson*, 477 U.S. at 256 (discussing Fed. R. Civ. P. 56(e)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

## II.   ANALYSIS

As an initial matter, Plaintiffs contend that the Court should not consider Defendants' exhibits submitted with their opposition brief because they were not attached to an affidavit. Affidavits, however, are not absolutely necessary. The Court can consider exhibits so long as they could be presented in an admissible form at trial such as through testimony of an individual who can authenticate the document. Fed. R. Civ. P. Rule 56(c)(2); *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012). Here, an individual could testify to both the accuracy and authentication of each exhibit.[1] Thus, the Court will consider Defendants' exhibits.

---

[1] The exhibits contain either business records from Builders Alliance or communications that involve a Defendant or the Defendants' lawyers. Therefore, testimony at trial authenticating the documents would likely not be burdensome to obtain.

ERISA § 515 states that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of . . . a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. It is undisputed that Defendants were bound to the terms of the CBA.[2] (Compl. ¶¶ 6, 9, 10; Ans. ¶¶ 7, 10, 11.)

Plaintiffs assert Defendants owe $74,065.53 in unpaid contributions. In support of this amount, Plaintiffs submitted a declaration from the auditor, the audit invoice sent to Defendants, and several documents relied upon by the auditor. (*See, e.g.*, Anderson Decl., Exs. E–K.)

Defendants do not dispute that they owe fringe benefit contributions to the Funds. Rather, their sole argument is that they owe a lower amount than Plaintiffs ask for. Defendants submitted three exhibits to support this contention. First, Defendants point to Exhibit A, a fringe fund report for a specific construction project. Exhibit A lists $11,830.29 as due and owing to the Funds in contributions. This is the amount Defendants claim they owe to Plaintiffs, nothing more. Defendants provide no explanation as to why Exhibit A contains the correct amount, how this value was even calculated, or how the exhibit demonstrates that the number calculated by Plaintiffs' auditor was incorrect. Defendants could have submitted payrolls, remittance fund

---

[2] Defendants make a passing statement that Plaintiffs failed to produce the CBA to them. (Def. Memo. Opp. Summ. J. Mot. at 1.) This is incorrect, the CBA was attached as Exhibit A to Anderson's Declaration.

amounts, tax documents, employee earning summaries or employee paystubs to corroborate their claim. Instead, they chose to rely on this one unsubstantiated and ambiguous exhibit to support the assertion that they owe significantly less than what Plaintiffs have asked for.

Plaintiffs explain that the hours listed in Exhibit A were included in the audit invoice, but that Exhibit A includes only a fraction of the total amount of unpaid contributions owed. The audit invoice, Plaintiffs argue, captures all the unpaid contributions, not just a select portion of them. And, unlike Defendants, Plaintiffs corroborate this assertion with a significant amount of evidence, such as a sworn declaration from the auditor, the invoice itemizing all the unpaid covered hours, fringe benefit reports, logged hours from the subcontractor, and a payroll document.

Defendants point to both Exhibits B and C in an attempt to show a genuine dispute of material fact as it relates to alleged uncredited payments made by Builders Alliance to the Funds. Exhibit B is a text message between Speese and Defendants' attorney where Speese alleges a payment was made to "Davis bacon" for $54,000. Since this payment was never credited against the audit invoice, Defendants claim that this text message creates a genuine dispute as to the amount owed in unpaid contributions. Defendants are incorrect. It is unclear what the text is even discussing, but its' reference to "Davis bacon" likely refers to the Davis-Bacon Act; an Act wholly unrelated and irrelevant to

payments made under ERISA § 515 or the CBA.  Defendants fail to clarify how this text message has any relevancy to the unpaid fringe benefit contributions.

Exhibit C is likewise unhelpful to Defendants.  Exhibit C is an email from Builders Alliance's accountant discussing several projects Builders Alliance was working on, the subcontractors employed on those projects, and certain payments allegedly made to the Funds, including one made to the Department of Labor.  Defendants' accountant states that a portion of the payment to the Department of Labor was supposed to be designated to the Funds.  Defendants fail to explain whether the payment was actually designated or who was purportedly making such a disbursement.  Additionally, Defendants have produced no documentation evidencing this alleged understanding or proving that this payment related to the unpaid contributions at all.  The accountant's statement is vague and unsubstantiated; it is not sufficient to raise a genuine dispute of material fact.  Further undermining Defendants' argument that these exhibits raise a factual dispute is that Plaintiffs have searched their records and have attested that they have no record of either alleged payment.

In sum, the exhibits Defendants submitted are incomplete, unsupported, and fail to create a genuine dispute of material fact.  Defendants hope that their mere scintilla of evidence will be sufficient to survive summary judgment, it is not.  At best, Defendants' exhibits are an incomplete account of the unpaid contributions owed.  Whatever Defendants' exhibits do prove, it is not sufficient to refute or create a factual dispute

regarding Plaintiffs' fully corroborated request for $74,065.53. On this evidence, no reasonable jury could return a verdict for Defendants, finding they owe only a fraction of what Plaintiffs have established they are entitled to.

At oral argument Defendants stated they had difficulty obtaining certain relevant documents from their accountant as a result of the COVID-19 pandemic. Defendants asked the Court to deny summary judgment in light of this forthcoming evidence. The Court notes that this litigation has been ongoing for well over a year. However, in the event that Defendants procure these documents, the Court encourages them to file a Motion to Reconsider under Local Rule 7.1.

Plaintiffs have supported their motion with ample evidence, and Defendants have failed to point the Court to anything that could create a genuine issue for trial. Accordingly, the Court will grant Plaintiffs' Motion for Summary Judgment on their claims for unpaid fringe benefit contributions and damages.

Plaintiffs are entitled to a money judgment of $74,065.53 against Defendants for unpaid fringe benefit contributions during the audit period of December 2016 through November 2019. Under the terms of the CBA and ERISA § 502(g)(2), the Court must also award to Plaintiffs a money judgment for liquidated damages, interest on the unpaid fringe benefit contributions, and attorneys' fees and costs. Thus, the Court awards Plaintiffs $7,406.55 in liquidated damages, which equals 10 percent of the unpaid fringe

benefit contributions per the CBA; interest in the amount of $2,255.54;[3] and $12,886.00 in reasonable attorneys' fees. The Court will not award any attorneys' costs as Plaintiffs did not submit documentation to verify the amount requested.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion for Summary Judgment [Docket No. 19] is **GRANTED**; and

2. Plaintiffs are awarded a money judgment against Defendants in the amount of $74,065.53 for unpaid fringe benefit contributions, $7,406.55 in liquidated damages, $2,255.54 in interest accrued, and $12,886.00 in reasonable attorneys' fees.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: December 1, 2021  
at Minneapolis, Minnesota.

_____  
JOHN R. TUNHEIM  
Chief Judge  
United States District Court

---

[3] Curiously, this amount is more than what Plaintiffs requested in their motion. It is unclear why Plaintiffs requested a lower number than they are entitled to. The Court reached this sum by multiplying the unpaid fringe benefit contributions by 3 percent, as directed under the CBA, Trust Documents, and 26 U.S.C. § 6621. The amount was compounded daily as prescribed by statute. 26 U.S.C. § 6622(a).